UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARCOS AVALOS,

                    Petitioner,

          v.

GREGG LEWIS,

                    Respondent.

No. 2:12-cv-0052 TLN DAD P

FINDINGS AND RECOMMENDATIONS

Petitioner is a state prisoner proceeding pro se with an amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a judgment of conviction entered against him on July 23, 2007, in the Sacramento County Superior Court on charges of assault with a deadly weapon by a person confined in state prison. He seeks federal habeas relief on the grounds that his right to due process was violated by juror misconduct and jury instruction error and that his trial counsel rendered ineffective assistance. Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

**I. Background**

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

1

A jury found defendants Marco Avalos and Ezequiel Romo guilty of assault with a deadly weapon by a person confined in state prison and found true the allegation that defendant Avalos personally used a deadly weapon.  The trial court sentenced defendant Avalos to 26 years to life and defendant Romo to eight years.  The trial court sentenced defendants to these terms based on prior strikes.

Defendants appeal, arguing the trial court erroneously denied their motion for a new trial because the grounds for their motion, juror misconduct, was incorrectly found to be not prejudicial by the trial court.  Defendants also argue the allegations of their prior convictions were never found true, and, as a result, those sentence enhancements should be stricken.  The People argue the juror misconduct was not prejudicial, but they concede the trial court did not find the prior conviction allegations true but request we remand for a bench trial on those allegations.  We agree with the People.

**FACTUAL AND PROCEDURAL BACKGROUND**

Defendants were both charged with assault with a deadly weapon while confined in a state prison, and defendant Avalos's charge was enhanced by an allegation of the personal use of a deadly weapon.  The People further alleged defendant Avalos had three prior strikes and defendant Romo had one prior strike.  Both defendants pled not guilty, stipulated they were prison inmates at the time of the incident, and denied all enhancing allegations.  Both defendants consented to a bench trial on the prior strike allegations.

During the jury trial, the People called several correctional officers who testified they saw defendants attacking another inmate.  During closing argument, defendants focused the jury's attention on their argument that the identification of defendants by the correctional officers was not proved beyond a reasonable doubt.  A jury found both defendants guilty of assault with a deadly weapon while confined in a state prison and found defendant Avalos to have personally used a deadly weapon.

After conviction and before sentencing, defendants produced declarations by five jurors attesting they had seen defendant Romo walking the halls with a small boy and that one juror had remarked that it was terrible for defendant Romo to use a child as a means to get sympathy.  The declarations did not indicate when this incident occurred.  Based on these declarations, defendants moved for a new trial on the grounds of juror misconduct.  The trial court denied the motion for a new trial because it found the juror misconduct not to be prejudicial.

The trial court incorrectly believed it had already found the prior strikes true and sentenced defendant Avalos to 26 years to life and defendant Romo to eight years based on that false belief.

People v. Romo, No. C057455, 2009 WL 2738427 (Cal. App. 3 Dist. Aug. 31, 2009), at *1.

/////

2

1    The California Court of Appeal affirmed the convictions of petitioner and his co-

2    defendant Romo but vacated their sentences and remanded the cases for a bench trial on the prior

3    conviction allegations and for resentencing as to both.  (Id. at *4.)  On remand, the trial court

4    vacated the sentences and, after conducting a bench trial, found true the three prior strike

5    conviction allegations against petitioner and the one prior strike conviction allegation against his

6    co-defendant Romo.  ("Document 7," lodged on March 20, 2012, at 2.)  The trial court then re-

7    imposed the previously imposed prison sentences against both defendants.  (Id.)  Petitioner

8    appealed again following the bench trial and re-sentencing and his judgment of conviction was

9    affirmed.  (Id. at 5.)

10    After the California Court of Appeal rendered its opinion on petitioner's original appeal,

11    he filed a petition for review in the California Supreme Court.  (Resp't's Lod. Doc. 6.)  Therein,

12    he raised the jury misconduct claim that he had raised on direct appeal.  (Id.)  That petition for

13    review was summarily denied.  (Resp't's Lod. Doc. 7.)

14    Subsequently, petitioner filed a petition for writ of habeas corpus in the Sacramento

15    County Superior Court, in which he claimed that his trial counsel had rendered ineffective

16    assistance.  (Resp't's Lod. Doc. 8.)  That state habeas petition was denied in a reasoned decision

17    on the merits of petitioner's claims.  (Resp't's Lod. Doc. 9.)

18    Petitioner next filed a petition for writ of habeas corpus in the California Court of Appeal,

19    again claiming that his trial counsel had rendered ineffective assistance.  (Resp't's Lod. Doc. 10.)

20    That petition was denied with the state appellate court citing the decisions in In re Steele, 32

21    Cal.4th 682, 692 (2004) (requests for discovery should be made in the lower courts in the first

22    instance), and In re Hillery, 202 Cal.App.2d 293, 294 (1962) ("Generally speaking, habeas corpus

23    proceedings involving a factual situation should be tried in Superior Court rather than in a District

24    Court of Appeal").  (Resp't's Lod. Doc. 11.)

25    Subsequently, petitioner filed two petitions for a writ of habeas corpus in the California

26    Supreme Court.  (Resp't's Lod. Docs. 12, 14.)  The first such petition, which raised claims of

27    ineffective assistance of counsel, was denied with citations to the decisions in People v. Duvall, 9

28    Cal.4th 464, 474 (1949) (a habeas petition must state with particularity the facts upon which relief

3

1  is sought and should include copies of reasonably available documentary evidence supporting the

2  claim) and In re Swain, 34 Cal.2d 300, 304 (1949) (a habeas petitioner must "allege with

3  particularity the facts upon which he would have a final judgment overturned").  (Resp't's Lod.

4  Doc. 13.)  In his second habeas petition filed in the California Supreme Court, petitioner claimed

5  that:  (1) the jury foreman at his trial committed juror misconduct by coercing a jury verdict; (2)

6  the trial court violated petitioner's right to due process when it instructed the jury that it must

7  reach a unanimous verdict; and (3) his trial counsel rendered ineffective assistance by failing to

8  obtain a Spanish language interpreter for him at his trial.  (Resp't's Lod. Doc. 14.)  That petition

9  was denied as untimely, with citations to In re Robbins, 18 Cal.4th 770, 780 (1998) and In re

10  Clark, 5 Cal.4th 750, 767-69 (1993).  (Resp't's Lod. Doc. 15.)

11  On February 6, 2014, petitioner filed a first amended petition for writ of habeas corpus in

12  this court, upon which this action is proceeding.  (ECF No. 34.)

13  **II.  Standards of Review Applicable to Habeas Corpus Claims**

14  An application for a writ of habeas corpus by a person in custody under a judgment of a

15  state court can be granted only for violations of the Constitution or laws of the United States.  28

16  U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

17  application of state law.  See Wilson v. Corcoran, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010);

18  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir.

19  2000).

20  Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

21  corpus relief:

22  An application for a writ of habeas corpus on behalf of a
person in custody pursuant to the judgment of a State court shall not
23  be granted with respect to any claim that was adjudicated on the
merits in State court proceedings unless the adjudication of the
24  claim -

25  (1) resulted in a decision that was contrary to, or involved
an unreasonable application of, clearly established Federal law, as
26  determined by the Supreme Court of the United States; or

27  (2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the
28  State court proceeding.

4

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Greene v. Fisher, ___ U.S. ___, 132 S. Ct. 38, 44 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably."  Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced."  Marshall v. Rodgers, ___ U.S. ___, ___, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, ___ U.S. ___, ___, 132 S. Ct. 2148, 2155 (2012)).  Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct.  Id.  Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue.  Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003).  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[1]  Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004).  A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Williams, 529 U.S. at 412.  See also Schriro v. Landrigan, 550 U.S. 465, 473

---

[1]   Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding."  Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

1   (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

2   review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

3   "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

4   'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v.

5   Richter, 562 U.S.___,___,131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S.

6   652, 664 (2004)).   Accordingly, "[a]s a condition for obtaining habeas corpus from a federal

7   court, a state prisoner must show that the state court's ruling on the claim being presented in

8   federal court was so lacking in justification that there was an error well understood and

9   comprehended in existing law beyond any possibility for fairminded disagreement." Richter,131

10  S. Ct. at 786-87.

11          If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

12  court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford,

13  527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)

14  (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

15  2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering

16  de novo the constitutional issues raised.").

17          The court looks to the last reasoned state court decision as the basis for the state court

18  judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

19  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

20  previous state court decision, this court may consider both decisions to ascertain the reasoning of

21  the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a

22  federal claim has been presented to a state court and the state court has denied relief, it may be

23  presumed that the state court adjudicated the claim on the merits in the absence of any indication

24  or state-law procedural principles to the contrary." Richter, 131 S. Ct. at 784-85.  This

25  presumption may be overcome by a showing "there is reason to think some other explanation for

26  the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797,

27  803 (1991)).  Similarly, when a state court decision on a petitioner's claims rejects some claims

28  but does not expressly address a federal claim, a federal habeas court must presume, subject to

6

1  rebuttal, that the federal claim was adjudicated on the merits.  Johnson v. Williams, ___ U.S. ___,

2  ___, 133 S. Ct. 1088, 1091 (2013).

3       Where the state court reaches a decision on the merits but provides no reasoning to

4  support its conclusion, a federal habeas court independently reviews the record to determine

5  whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v.

6  Thompson, 336 F.3d 848, 853 (9th Cir. 2003).   "Independent review of the record is not de novo

7  review of the constitutional issue, but rather, the only method by which we can determine whether

8  a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.  Where no

9  reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

10  reasonable basis for the state court to deny relief."  Richter, 131 S. Ct. at 784.

11       A summary denial is presumed to be a denial on the merits of the petitioner's claims.

12  Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012).  While the federal court cannot analyze

13  just what the state court did when it issued a summary denial, the federal court must review the

14  state court record to determine whether there was any "reasonable basis for the state court to deny

15  relief."  Richter, 131 S. Ct. at 784.  This court "must determine what arguments or theories . . .

16  could have supported, the state court's decision; and then it must ask whether it is possible

17  fairminded jurists could disagree that those arguments or theories are inconsistent with the

18  holding in a prior decision of [the Supreme] Court."  Id. at 786.  The petitioner bears "the burden

19  to demonstrate that 'there was no reasonable basis for the state court to deny relief.'"  Walker v.

20  Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 131 S. Ct. at 784).

21       When it is clear, however, that a state court has not reached the merits of a petitioner's

22  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

23  habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462

24  F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

25  **III.  Petitioner's Claims**

26       **A.  Juror Misconduct**

27       In petitioner's first claim for relief, he argues that his rights to due process and a fair and

28  impartial jury were violated by juror misconduct which resulted in the jury's consideration of

1   impermissible extraneous information.  Petitioner also claims that the jury foreman coerced a

2   unanimous verdict.  (ECF No. 34 at 5-6.)[2]  The court will evaluate these claims in turn below.

3   **1.  Juror Statements Regarding Co-Defendant Romo**

4       On direct appeal and in his petition for review filed in the California Supreme Court,

5   petitioner argued that his rights to due process and an impartial jury were violated by prejudicial

6   jury misconduct when a juror saw petitioner's co-defendant Romo in the courtroom hallway

7   walking with a child, and then commented in the hearing of other jurors that "it was terrible to use

8   a child to gain sympathy."  (Resp't's Lod. Doc. 2 at 6-10; Resp't's Lod. Doc. 6.)  The California

9   Court of Appeal rejected petitioner's argument on this point, reasoning as follows:

> Defendants argue prejudicial juror misconduct occurred and the
> trial court erroneously denied their motions for a new trial.  In
> reviewing a motion for new trial based on a claim of juror
> misconduct, "[w]e accept the trial court's credibility determinations
> and findings on questions of historical facts."  (People v. Nesler
> (1997) 16 Cal.4th 561, 582.)  We determine independently if
> prejudice arose from the misconduct (id. at pp. 582-583), but if
> misconduct is established, it is presumed prejudicial (id. at p. 578).
> That presumption can be rebutted if there is no substantial
> likelihood the misconduct created juror bias.  (Nesler, at p. 578.)
> There is no substantial likelihood of juror bias if the following two
> conditions are met:  (1) the misconduct is not inherently prejudicial;
> and (2) after reviewing the totality of the circumstances, there is no
> substantial likelihood any juror was actually biased.  (Id. at pp. 578-
> 579.)  Only if the misconduct is prejudicial, i.e., there is a
> substantial likelihood of actual bias, will the verdict be set aside and
> a motion for a new trial granted.  (Id. at p. 579.)
>
> Based on the trial court's findings, juror misconduct did occur.  The
> trial court found, based on five juror declarations, that at least six
> jurors saw defendant Romo walking the hallway of the court with a
> little boy and that one of those jurors said "'it was terrible to use a
> child as a means to get sympathy.'"  The trial court rightly
> considered this incident misconduct because the introduction of
> information regarding defendant Romo's choice of companion in
> walking the court hallways and an individual juror's interpretation
> of that situation was evidence outside the record.  (See In re
> Carpenter (1995) 9 Cal.4th 634, 647-648.)
>
> In an analysis of this misconduct vis-à-vis each defendant, we
> conclude it was not prejudicial because it is not substantially likely
> to have created actual juror bias.  Therefore, we conclude the trial
> court correctly denied the motion for a new trial.

---

[2]  Page number citations such as this one are to the page numbers reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

## A

**The Juror Misconduct Was Not Prejudicial To Defendant Avalos**

Defendant Avalos contends the juror misconduct was prejudicial to him because the presumption of prejudice was not rebutted.

We disagree.  The incident was not inherently prejudicial to defendant Avalos because the incident did not concern him. Rather, jurors saw, and one commented on, defendant Romo walking with a small boy.  This incident had no inherent relationship to defendant Avalos.

Further, the totality of the circumstances does not suggest a substantial likelihood that any juror was actually biased against defendant Avalos.  Defendant Avalos suggests any bias generated toward defendant Romo as a result of the misconduct would spill over to him because both defendants made similar arguments to the jury regarding misidentification.   Therefore, defendant Avalos contends, if a juror were biased enough against defendant Romo to overlook the claim of misidentification, he or she would also automatically dismiss the claim of misidentification concerns of defendant Avalos as well.  Even assuming this incident biased a juror against defendant Romo, the logical leap to assume the prejudice transferred to defendant Avalos is attenuated at best and does not support a substantial likelihood that any juror was actually biased against defendant Avalos.

Furthermore, the identification of defendant Avalos as one of the assailants is nearly overwhelming based on testimony by multiple corrections officers, one of whom knew Avalos by sight and name prior to the incident.  And where the evidence is overwhelming, it makes the likelihood of actual bias more remote.  (See In re Carpenter, supra, 9 Cal.4th at p. 654.)

Additionally, there is no evidence the extraneous information or comment was used or considered during deliberations.  (Cf. People v. Nesler, supra, 16 Cal.4th at pp. 583-584 [where the court was concerned mainly with the possible use of any extraneous information during deliberations].)  And "[w]e will not presume greater misconduct than the evidence shows."  (In re Carpenter, supra, 9 Cal.4th at p. 657.)  As a result, this misconduct would be less likely to actually bias a juror during deliberations because we have no evidence it was discussed during deliberations.

## B

**The Juror Misconduct Was Not Prejudicial To Defendant Romo**

Defendant Romo contends the juror misconduct prejudiced the jury against him both because the misconduct was inherently prejudicial and because the totality of the circumstances suggest a substantial

9

likelihood a juror was actually biased against him as a result of the misconduct.

We disagree. That multiple jurors saw defendant Romo with a little boy and that one juror commented negatively on that sight is not inherently prejudicial. Nothing in the misconduct inherently relates to defendant Romo's guilt or to his contention he was misidentified. Furthermore, it is hardly unusual that a defendant, especially one who is known to the jury to have been a prison inmate, as was defendant Romo, would try to garner sympathy from the jury, regardless of his innocence or guilt. Just because a juror believed defendant Romo was trying to garner sympathy does not necessitate any thoughts about defendant Romo's guilt, as a juror would likely assume even an innocent defendant would try to arouse a jury's sympathy.

The totality of the circumstances suggests there was no substantial likelihood a juror was actually biased against defendant Romo. As in In re Carpenter, supra, 9 Cal.4th at page 654, the evidence here is overwhelming based on the testimony from multiple correctional officers identifying defendant Romo as one of the assailants. This overwhelming evidence reduces the possibility that any potential bias had any consequence, much less prejudicial impact.

Defendant argues there was a substantial likelihood of actual bias because the jurors considered this extraneous evidence during deliberations. However, there is no evidence this extraneous information was discussed during deliberations, and, again, "[w]e will not presume greater misconduct than the evidence shows." (In re Carpenter, supra, 9 Cal.4th at p. 657.)

Accordingly, the witnessing of and commenting on defendant Romo's promenade with a little boy was juror misconduct, but the presumption this was prejudicial has been sufficiently rebutted.

People v. Romo, 2009 WL 2738427, at **1-3.

Petitioner argues in the instant petition, as he did in the state appellate court, that the prejudice to his co-defendant Romo resulting from the juror's comment that Romo was using a child to gain sympathy "spilled over onto Petitioner." (ECF No. 34 at 5.) He explains:

Both Petitioners [sic] defense and (Romo) were based on an attempt to discredit the identification testimony of the prison guards. If the jury was or believed (Romo) was using a manipulative maneuver the spillover affect [sic] of prejudice certainly could have biased Petitioners defense, since both shared a common one.

(Id.) Petitioner also argues that this court should grant him an evidentiary hearing to determine whether the receipt of this extraneous information by the jury resulted in juror bias and influenced the jury's verdict. (ECF No. 41 at 8-10.)

10

1    Under the Sixth Amendment, a criminal defendant has the right to be tried by an impartial

2    jury and to confront and cross-examine the witnesses who testify against him.  Irvin v. Dowd, 366

3    U.S. 717, 722 (1961); Pennsylvania v. Ritchie, 480 U.S. 39, 51 (1987).  Jurors are objectionable if

4    they have formed such deep and strong impressions that they will not listen to testimony with an

5    open mind.  Irvin, 816 U.S. at 722 n.3.  A defendant is denied the right to an impartial jury if even

6    one juror is biased or prejudiced.  Dyer v. Calderon, 151 F.3d 970, 973 (9th Cir. 1998) (en banc);

7    United States v. Eubanks, 591 F.2d 513, 517 (9th Cir. 1979).  Thus, "[t]he presence of a biased

8    juror cannot be harmless; the error requires a new trial without a showing of actual prejudice."

9    United States v. Gonzalez, 214 F.3d 1109, 1111 (9th Cir. 2000) (quoting Dyer, 151 F.3d at 973

10   n.2).

11   A defendant in a criminal case is also entitled to a jury that reaches a verdict only on the

12   basis of evidence produced at trial.  Turner v. Louisiana, 379 U.S. 466 (1965); Estrada v.

13   Scribner, 512 F.3d 1227, 1238 (9th Cir. 2008); Bayramoglu v. Estelle, 806 F.2d 880, 887 (9th

14   Cir. 1986) ("Jurors have a duty to consider only the evidence which is presented to them in open

15   court.").  The introduction of prejudicial extraneous influences into the jury room constitutes

16   misconduct which may result in the reversal of a conviction.  Parker v. Gladden, 385 U.S. 363,

17   364-65 (1966).  On collateral review, trial errors, such as extraneous information that was

18   considered by the jury, "are generally subject to a 'harmless error' analysis, namely, whether the

19   error had 'substantial and injurious' effect or influence in determining the jury's verdict."  Jeffries

20   v. Wood, 114 F.3d 1484, 1491 (9th Cir. 1997)), overruled on other grounds by Lindh v. Murphy,

21   521 U.S. 320 (1997) (citing Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).  See also Estrada,

22   512 F.3d at 1235; Brown v. Ornoski, 503 F.3d 1006, 1018 (9th Cir. 2007) (finding the state

23   court's rejection of a claim based upon the allegation that four jurors had overheard petitioner's

24   family and friends conversing about the case not to be objectively unreasonable); Fields v.

25   Brown, 431 F.3d 1186, 1209 n.16 (9th Cir. 2005) (noting that Brecht provides the standard of

26   review for harmless error in cases involving unconstitutional juror misconduct).

27   The decision of the California Court of Appeal that any misconduct resulting from the one

28   juror's remark about co-defendant Romo did not result in prejudice to petitioner is not contrary to

1    or an unreasonable application of the federal authorities cited above and should not be set aside

2    on federal habeas review.  As noted by the state appellate court, the remark was not directed

3    against petitioner, but against his co-defendant.  Assuming arguendo the jury thought Romo was

4    trying to curry favor by walking the courthouse halls with a child, there is no evidence the jury

5    attributed Romo's behavior in any way to petitioner or that their verdict as to petitioner was in

6    any way influenced by it.  Second, the evidence against petitioner was overwhelming, thereby

7    lessening the prejudicial impact, if any, of the juror's remarks.  Finally, any possible prejudice to

8    petitioner was alleviated by the court's instruction to the jury that it "must disregard anything you

9    saw or heard when court was not in session."  (Clerk's Transcript on Appeal (CT) at 278.)  The

10   jury is presumed to have followed this instruction.  Penry v. Johnson, 532 U.S. 782, 799 (2001);

11   Richardson v. Marsh, 481 U.S. 200, 211 (1987); Fields v. Brown, 503 F.3d 755, 782 (9th Cir.

12   2007).

13        Under the circumstances presented here, the juror's remark about co-defendant Romo's

14   behavior could not have had a substantial and injurious effect or influence on the jury verdict

15   returned against petitioner.  Accordingly, petitioner is not entitled to federal habeas relief with

16   respect to this aspect of his juror misconduct claim.[3]

17        **2.  Coerced Verdict**

18        Petitioner's next claim is that the jury foreman at his trial coerced the other jurors to find

19   petitioner guilty of the charged offenses, in violation of his rights to due process and a fair trial.

20   (ECF No. 34 at 6.)  Specifically, petitioner argues that the foreman:

21        1.   Attempted to pressure the jurors into voting the way he saw
            things;

22

23   _____

24   [3]   Petitioner argues that the California Court of Appeal did not address a federal constitutional
     claim that the juror's remark violated his right to due process and, therefore, this court should
25   conduct a de novo review of this claim.  (ECF No. 41 at 8-9.)  The undersigned disagrees.  As
     noted above,  when a state court decision on a petitioner's claims rejects some claims but does not
26   expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that
     the federal claim was adjudicated on the merits.  Johnson, 133 S. Ct. at 1091.  Petitioner has not
27   rebutted the presumption that the state courts addressed his federal claim of juror misconduct on
     the merits.  In any event, for the reasons explained above, even under a de novo standard of
28   review petitioner would not be entitled to federal habeas relief on this claim.

2.  Said he was going on vacation in a couple days and they "had" to come to a verdict.

3.  Verbally abused a juror that (Mr. Pierce) asked to be removed from the jury all together due to the foremans [sic] attitude.

4.  He verbally beat down the other hold out juror until she finally gave up and voted against what she truely [sic] felt.

(Id.)

In support of this claim, petitioner has attached to his petition several reports, apparently written by a defense investigator, describing interviews with some of the jurors after petitioner's trial concluded.  (Id. at 26-28.)  One such report explains that:  (1) juror Pierce complained that the jury foreman "said that he was going on vacation in a couple of days and they had to come to a verdict;" (2) Mr. Pierce stated that "the other jurors really beat down the other holdout juror and she too finally gave up and voted against what she truly felt;" (3) after deliberations became contentious, Mr. Pierce asked to be removed from the jury; and (4) Mr. Pierce believed a hung jury was not a possible option, based, in part, on the "demeanor and attitude of the jury foreman." (Id. at 27-28.)  In another such report, a different juror informed the defense investigator that one of the jury members was unwilling to vote with the majority to convict petitioner on one of the charges against him, but then changed her vote because she "caved in too easy."  (Id. at 31.)

In support of this claim for relief petitioner has also attached to his petition an excerpt of the trial transcript reflecting that juror Pierce asked to be removed from the jury.  (Id. at 44-47.) Therein, Mr. Pierce informs the trial judge that he was "personally attacked" by several jurors, that the jury was unable to reach a verdict, and that other jurors were trying to convince him to change his vote.  (Id. at 44-45.)  In response to Mr. Pierce's statements, the trial judge stated that "the obligation of a juror is to have an open mind" and that he should "deliberate with your fellow jurors," and "vote your conscience."  (Id. at 46.)

Petitioner raised this jury misconduct claim for the first time in a habeas petition he filed in the California Supreme Court.  (Resp't's Lod. Doc. 14, at consecutive p. 3.)  The California Supreme Court denied that petition, citing the decisions in In re Robbins (1998) 18 Cal.4th 770, 780 and In re Clark (1993) 5 Cal.4th 750.  (Resp't's Lod. Doc. 13.)  The citations to Robbins and

1   _Clark_ reflects that petitioner's habeas petition was denied by the California Supreme Court

2   because it was deemed untimely under state law.  _Walker v. Martin_, 562 U.S. ___, ___,131 S. Ct.

3   1120, 1126 (2011) ("A summary denial citing _Clark_ and _Robbins_ means that the petition is

4   rejected as untimely.").  Respondent argues that given that basis the California Supreme Court's

5   denial of  habeas relief constitutes a state procedural timeliness bar which precludes this federal

6   habeas court from considering the merits of petitioner's claim of juror misconduct.  (ECF No. 37

7   at 19.)

8           State courts may decline to review a claim based on a procedural default. _Wainwright v._

9   _Sykes_, 433 U.S. 72, 86-87 (1977).  As a general rule, "[a] federal habeas court will not review a

10  claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that

11  is independent of the federal question and adequate to support the judgment." _Martin_, 131 S. Ct.

12  at 1127 (quoting _Beard v. Kindler_, 558 U.S. ___, ___, 130 S. Ct. 612, 615 (2009).  _See also_

13  _Maples v. Thomas_, ___U.S.___, ___, 132 S. Ct. 912, 922 (2012); _Greenway v. Schriro_, 653 F.3d

14  790, 797 (9th Cir. 2011); _Calderon v. United States District Court (Bean)_, 96 F.3d 1126, 1129

15  (9th Cir. 1996) (quoting _Coleman v. Thompson_, 501 U.S. 722, 729 (1991)).  "The state-law

16  ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of

17  the claim on the merits." _Martin_, 131 S. Ct. at 1127.  In order for a state procedural rule to be

18  found independent, the state law basis for the decision must not be interwoven with federal law.

19  _Cooper v. Neven_, 641 F.3d 322, 332 (9th Cir.), _cert. denied_ ___U.S.___, 132 S. Ct. 558 (2011);

20  _Bennett v. Mueller_, 322 F.3d 573, 581 (9th Cir. 2003); _LaCrosse v. Kernan_, 244 F.3d 702, 704

21  (9th Cir. 2001); _Park v. California_, 202 F.3d 1146, 1152 (9th Cir. 2000).  To be deemed adequate,

22  the rule must be well established and consistently applied.  _Martin_ 131 S. Ct. at 1128; Beard 130

23  S. Ct. at 617; _Greenway_, 653 F.3d at 797-98; _Poland v. Stewart_, 169 F.3d 575, 577 (9th Cir.

24  1999).  Even if the state rule is independent and adequate, the claims may be reviewed by the

25  federal court if the petitioner can show:  (1) cause for the default and actual prejudice as a result

26  of the alleged violation of federal law; or (2) that failure to consider the claims will result in a

27  fundamental miscarriage of justice.  _Edwards v. Carpenter_, 529 U.S. 446, 451 (2000); _Coleman_,

28  501 U.S. at 749-50; _see also_ _Maples_, 132 S. Ct. at 922.

The United States Supreme Court has held that denial of habeas relief by the California Supreme Court on the grounds that the application for relief was not timely filed is an independent and adequate state procedural ground requiring denial of a subsequent habeas petition in federal court. Martin, 131 S. Ct. 1120.[4] See also Alvarez v. Wong, No. 09-15547, 425 Fed. Appx. 652, at *1 (9th Cir. Apr. 5, 2011) (affirming the dismissal of a habeas petition and recognizing the holding in Martin that "denial of habeas relief by the California Supreme Court on the ground that the application . . . was filed untimely was an independent and adequate state procedural ground requiring denial of subsequent habeas petitions in federal court" as well as that a citation to In re Clark "signals the court's conclusion that the petition was untimely.")[5] The Supreme Court has also noted, however, that "federal courts must carefully examine state procedural requirements to ensure that they do not operate to discriminate against claims of federal rights." Martin, 131 S. Ct. at 1130.

In this case, the California Supreme Court's citation to In re Clark, and In re Robbins in denying habeas relief signals that petitioner's habeas petition was untimely. Martin, 131 S. Ct. at 1122. There is no evidence in the record that the timeliness bar was imposed in this case by the California Supreme Court in an attempt to discriminate against petitioner's claims of a violation of his federal rights or that it was imposed in an unfair manner. There is also no basis for concluding that the imposition of California's timeliness rule here operated to "the particular disadvantage of petitioners asserting federal rights." Martin, 131 S. Ct. at 1131. See also Kindler, 130 S. Ct. at 620 (Kennedy, J., concurring) (a state procedural ground would be inadequate if the challenger shows a "purpose or pattern to evade constitutional guarantees"). Because California's timeliness rule is a valid procedural ground for precluding federal review of petitioner's claim of juror misconduct, this court may only reach the merits of the claim if

/////

---

[4]  In Martin, a non-capital case, the state habeas petition in question had been denied by the California Supreme Court with citations to In re Clark and In re Robbins, as was the case here. See 131 S. Ct. at 1127.

[5]  Citation to this unpublished decision is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1   petitioner were to show cause and prejudice or that this court's failure to consider the claim will

2   result in a fundamental miscarriage of justice.

3       "[T]he existence of cause for a procedural default must ordinarily turn on whether the

4   prisoner can show that some objective factor external to the defense impeded . . . efforts to

5   comply with the state's procedural rule."  Murray v. Carrier, 477 U.S. 478, 488 (1986).  See also

6   Coleman, 501 U.S. at 753 ("cause" under the cause and prejudice test must be something external

7   to the petitioner that cannot be fairly attributed to him); Smith v. Baldwin, 510 F.3d 1127, 1146

8   (9th Cir. 2007) ("In order to establish cause for a procedural default, a petitioner must

9   demonstrate that the default is due to an external objective factor that 'cannot fairly be attributed

10  to him.'")  "To establish prejudice resulting from a procedural default, a habeas petitioner bears

11  'the burden of showing not merely that the errors at his trial constituted a possibility of prejudice,

12  but that they worked to his actual and substantial disadvantage, infecting his entire trial with

13  errors of constitutional dimension.'"  White v. Lewis, 874 F.2d 599, 603 (9th Cir. 1989) (citing

14  United States v. Frady, 456 U.S. 152, 170 (1982)).  See also Cooper, 641 F.3d at 327.  To show

15  that a failure to consider the merits of a claim would result in a fundamental miscarriage of

16  justice, a petitioner must establish factual innocence.  See Smith v. Murray, 477 U.S. 527, 537

17  (1986); Smith, 510 F.3d at 1139-40; Gandarela v. Johnson, 286 F.3d 1080, 1085–86 (9th Cir.

18  2002); Wildman v. Johnson, 261 F.3d 832, 842–43 (9th Cir. 2001).  The burden of establishing

19  cause and prejudice or a fundamental miscarriage of justice always rests with the petitioner.

20  Coleman, 501 U.S. at 750; White, 874 F.2d at 603.

21      Petitioner contends that he has demonstrated cause and prejudice for his failure to raise

22  this jury misconduct claim earlier.  (ECF No. 41 at 3.)  Specifically, he argues that he was not

23  aware of the investigative reports reflecting the juror interviews, upon which this claim is based,

24  until he received his records from his appellate counsel after his direct appeal had been finally

25  resolved.  (Id. at 5-6.)  Petitioner argues that if he is found to have defaulted this claim because of

26  his failure to raise it on appeal, "then Petitioner is 'excused' from default, due to ineffective

27  assistance of counsel during Post Conviction relief" due to appellate counsel's failure to raise the

28  claim earlier.  (Id. at 6.)  He further argues, "if there was a default, was due to incompetent

1    counsel and this court may review this claim as this is new evidence previously unknown to

2    Petitioner." (Id.)

3        Ineffective assistance of counsel will establish cause to excuse a procedural default if it

4    was "so ineffective as to violate the Federal Constitution." Edwards, 529 U.S. at 451 (citing

5    Carrier, 477 U.S. at 486–88). See also Cook v. Schriro, 538 F.3d 1000, 1027 (9th Cir. 2008).

6    The ineffective assistance claim must be presented to the state courts as an independent claim

7    before it may be used to establish cause for a procedural default. Edwards, 529 U.S. at 451

8    (citing Carrier, 477 U.S. at 489.) Here, petitioner did not raise a claim in state court that his

9    appellate counsel rendered ineffective assistance in failing to raise a claim that the jury foreman at

10   his trial coerced a guilty verdict. Accordingly, petitioner has not cleared this hurdle. Cf.

11   Martinez v. Ryan, ___U.S. ___, ___, 132 S. Ct. 1309, 1320 (2012) ("[W]here, under state law,

12   claims of ineffective assistance of trial counsel must be raised in an initial-review collateral

13   proceeding, a procedural default will not bar a federal habeas court from hearing a substantial

14   claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no

15   counsel or counsel in that proceeding was ineffective."). Accordingly, petitioner has not

16   established cause for his procedural default of this claim.

17       Even assuming arguendo that petitioner has established cause to excuse his procedural

18   default because of ineffective assistance of counsel, he has failed to demonstrate prejudice in

19   order to overcome the procedural bar imposed by the California Supreme Court. Specifically,

20   because of his failure to support his juror misconduct claim with competent evidence, petitioner

21   has failed to demonstrate that juror misconduct "infected his entire trial with errors of

22   constitutional dimension." White, 874 F.2d at 603.

23       As noted by respondent, petitioner may not rely on the juror affidavits attached to his

24   federal habeas petition to support his jury misconduct claim because they explain the thought

25   processes of the jury. (ECF No. 37 at 19-20.) Rule 606(b) of the Federal Rules of Evidence

26   provides:

27           Upon an inquiry into the validity of a verdict or indictment, a juror
             may not testify as to any matter or statement occurring during the
28           course of the jury's deliberations or to the effect of anything upon

1

2

3

4

> his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith . . . .  Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.[6]

5   As the Ninth Circuit has explained, juror testimony may be considered to demonstrate that

6   extraneous evidence or information was introduced during the jury's deliberation, but not to show

7   the subjective impact of that extraneous information:

8

9

10

11

12

> A long line of precedent distinguishes between juror testimony about the consideration of extrinsic evidence, which may be considered by a reviewing court, and juror testimony about the subjective effect of evidence on the particular juror, which may not. . . .  Therefore, although we may consider testimony concerning whether the improper evidence was considered, we may not consider the jurors' testimony about the subjective impact of the improperly admitted evidence.

13   Sassounian v. Roe, 230 F.3d 1097, 1108-09 (9th Cir. 2000).  See also Tanner v. United States,

14   483 U.S. 107, 127 (1987) ("[L]ong-recognized and very substantial concerns support the

15   protection of jury deliberations from intrusive inquiry.").

16   Here, the juror affidavits referred to in the investigator's reports do not simply concern the

17   receipt of extraneous evidence.  Rather, they address the thought processes of several jurors

18   during their deliberations at petitioner's trial, the reason these jurors arrived at their verdict, and

19   their explanation of how they reacted to the statements and arguments made by their fellow

20   jurors.  Such information concerns the jurors' mental processes and is therefore inadmissible to

21   test the validity of the verdict at petitioner's trial.  Tanner, 483 U.S. at 117; Sassounian, 230 F.3d

22   at 1108-09; see also Fed. R. Evid. 606(b).  In the absence of these affidavits, petitioner's jury

23   misconduct claim is unsupported by any competent evidence.  Thus, petitioner cannot show that

24   any alleged misconduct by the jury foreman at his trial "worked to [petitioner's] actual and

25   substantial disadvantage, infecting his entire trial with errors of constitutional dimension."  White,

26   874 F.2d at 603.

27   /////

28   _____

[6]   The Federal Rules of Evidence apply to federal habeas proceedings.  Fed. R. Evid. 1101(e).

1    For the foregoing reasons, petitioner has failed to make an adequate showing of cause and

2    prejudice or that this court's failure to consider his juror misconduct claim will result in a

3    fundamental miscarriage of justice.  Accordingly, the claim is procedurally defaulted and barred

4    from federal habeas review.[7]

5    **B.  Jury Instruction Error**

6    In petitioner's next claim for relief, he alleges that the trial court violated his right to due

7    process when it instructed the jury to continue deliberations after the jury sent out a note asking

8    for the definition of a "hung jury."  (ECF No. 34 at 9.)  Petitioner argues that the trial court "gave

9    a complex instruction intended to prevent a hung jury, knowing full well there were jurors that

10   wanted to vote against guilt."  (Id. at 7.)  He asserts that the trial judge should have simply

11   defined the term "hung jury" instead of giving "some complex instruction that essentially said a

12   hung jury is not possible."  (Id.)  Petitioner argues that the judge's remarks in response to the

13   jury's inquiry "underminded [sic] the very core of Petitioners right to have a hung jury if one or

14   more of jurors believed in his innocence."  (Id. at 8.)  He argues that juror affidavits filed in

15   support of this claim provide evidence that "the instruction did have a profound effect on the

16   jurys [sic] verdict and thought process detrimental to Petitioner."  (Id.)

17   The background to this claim is the following.  During deliberations, the trial judge

18   received a note from the jury which stated that Juror No. 10 (Mr. Pierce) wished to be "taken off

19   the jury."  (Reporter's Transcript on Appeal (RT) at 647.)  The trial judge subsequently

20   questioned juror Pierce in the courtroom.  (Id. at 647-50.)  Pierce informed the trial judge that he

21   was "personally attacked" by several jurors and that the jury could not come to an agreement "as

22   far as how we felt about the whole situation."  (Id. at 647.)  Juror Pierce further stated that he

23   didn't think he could be "fair."  (Id.)  When the judge questioned Pierce further as to why he

24   wished to be removed from the jury, Pierce explained that the other jurors were "constantly"

25   _____

26   [7]   As explained above, petitioner may also overcome the procedural bar if he demonstrates that
     he is factually innocent of the crimes for which he was convicted.  See Gandarela, 286 F.3d at

27   1085–86 ("A petitioner may establish a procedural gateway permitting review of defaulted claims
     if he demonstrates 'actual innocence'") (citing Schlup, 513 U.S. at 327); Wildman, 261 F.3d at

28   842–43.  Petitioner has failed to make that showing.

19

trying to persuade him to change his vote even though he did not want to change it, and that the

jury didn't understand "the procedure" with respect to "if it's going to be, you know, a hung jury

or not on one of the charges." (Id. at 648.) The trial judge explained to juror Pierce that he would

not excuse him from the jury solely due to the fact that he was in the minority voting bloc. (Id. at

648-49.) When juror Pierce said that he was not going to change his mind, the judge stated,

"Well, the obligation of a juror is to have an open mind." (Id. at 649.) Pierce responded, "that's

correct." (Id.) The judge then stated that jurors must "deliberate with your fellow jurors" and

"vote your conscience." (Id.) The following colloquy between the trial judge and juror Pierce

then occurred:

> THE COURT:  And you just can't concede to the desire of the
> majority of jurors simply because they have a different view than
> yours.  At the same time, I indicated that you have to keep an open
> mind and deliberate with the other jurors.
>
> Do you think anything else can be done by way of deliberations that
> might be helpful in getting the jury to reach a unanimous verdict as
> to charges in this case as to either defendant, or whatever?
>
> JUROR NUMBER TEN:  No.  Here, again, we have deliberated.
> We pretty much voted and being on the minority side of that vote, I
> have an open mind; and I am sticking with what I came up with as
> far as what my decision is.
>
> THE COURT:  Do you continue to have an open mind?
>
> JUROR NUMBER TEN:  Yes.
>
> THE COURT:  Okay.  Well, I don't believe that I can excuse you
> as a juror . . .
>
> JUROR NUMBER TEN:  Sure.

(Id. at 649-50.)

Later that same day, the trial court received a note from the jury which stated: "We have

reached a point in our deliberations where we are potentially hung and need some clarifications.

What indicates a hung jury?" (CT at 300.) In the presence of all of the jurors, the trial judge

responded to that question as follows:

> My response to your question, what indicates a hung jury, is this:
> A hung jury is simply a jury that is unable to reach a unanimous

verdict.  That's the definition of a hung jury.  I am going to give you some further instructions and send you back out for deliberations, first of all, noting that you – that the foreperson has not noted that the jury is hung.

I am going to give you some further instructions and directions. It's been my experience on more than one occasion that a jury, which initially reports that it was unable to reach a verdict, was ultimately able to arrive at verdicts on the counts before it.

To assist you in further deliberations, I am going to further instruct you as follows: Your goal as jurors should be to reach a fair and impartial verdict if you are able to do so, based solely on the evidence presented and without regard for the consequences of your verdict, regardless of how long it takes to do so.

It is your duty as jurors to carefully consider, weigh and evaluate all of the evidence presented at the trial, to discuss your views regarding the evidence and to listen to and consider the views of your fellow jurors.

In the course of your further deliberations, you should not hesitate to re-examine your views, your own views, or to request your fellow jurors to re-examine theirs.

You should not hesitate to change a view you once held if you are convinced it is wrong or to suggest other jurors change their views if you are convinced they are wrong.

Fair and effective jury deliberations require a frank and forthright exchange of views.  As I previously instructed you, each of you must decide the case for yourself; and you should do so only after a full and complete consideration of all the evidence with your fellow jurors.

It is your duty as jurors to deliberate with the goal at [sic] arriving at a verdict on the charge if you can do so without violence to your individual judgment.   Both the People and the defendants are entitled to the individual judgment of each juror.

As I previously instructed you, you have the absolute discretion to discuss – to conduct your deliberations in any way you deem appropriate.

May I suggest that since you have not been able to arrive at a verdict using the methods you have chosen, that you consider to change the methods you have been following, at least temporarily, and try new methods.

For example, you may consider having different jurors to lead the discussions for a period of time or you may wish to experiment with reverse role-playing by having those on one side of an issue present and argue the other side's position and vice versa.

This might enable you to better understand the other's position.

21

By suggesting you should consider changes in your method of deliberation, I want to stress that I am not dictating or instructing you as how to conduct your deliberations. I merely find that you may find it productive to do whatever is necessary to ensure that each juror has a full and fair opportunity to discuss his or her views and consider the views of the other jurors.

I also suggest you re-read the instructions number 200 and 3550. These instructions pertain to your duties as jurors and make recommendations as to how you should deliberate.

The integrity of the trial requires that jurors at all times during their deliberations conduct themselves as required by the instructions. Instructions 200 and 3550 define the duties of a juror.

The decision the jury renders must be based on the facts and the law. You must determine what facts have been proved from the evidence received in the trial and not from any other source.

A fact is something proved by the evidence or by a stipulation.

Second, you must apply the law I state to you to the facts as you determine them and in this way arrive at your verdict. You must accept and follow the law as I state it to you, regardless of whether you agree with the law.

If anything concerning the law said by the lawyers in their argument or at any other time during the trial conflicts with my instructions on the law, you must follow my instructions.

Instruction 3550 defines the jury's duty to deliberate. The decisions you make in this case must be based on the evidence received in the trial and the instructions given by the Court.

There are matters – these are matters that this instruction requires you to discuss for the purpose of reaching a verdict.

Instruction 3550 also recommends how jurors should approach their task. You should keep in mind the recommendations of this instruction and suggestions when considering any additional instructions the comments that I made, the instructions that I presented to you.

I hope my comments and suggestions may have some assistance to you.

If there are specific areas in the evidence, that is, the testimony that was presented in the trial or any exhibits that the Court can assist you with, if there is further readback of testimony, for example, that might be useful in conducting your deliberations, the Court will authorize that that be provided for you.

If there is some clarification needed regarding the principles of law that you have been given that apply to this case, then the Court can provide additional clarification.

> You would need to spell out what additional assistance you are requesting, and then I will handle those requests.
>
> There are other things that might be done, depending on the nature of any requests for additional assistance that you may have.  Just let me know what you request, and I will let you know whether it can be accommodated.
>
> You are ordered to continue with your deliberations at this time.  If you have any other concerns or requests or any communications that you wish to report to me, please put those in writing on the form that the bailiff has provided and have it signed and dated by the foreperson and notify the bailiff.
>
> It is noon so this would be a good time for your noon recess.  That is my advice and suggestions at the moment.

(RT at 650-54.)

Petitioner argues that the trial judge's further instructions to the jury in response to its request for a definition of a "hung jury" were "confusing."  (ECF No. 41 at 14.)  He also argues that the trial judge improperly inquired into the "numerical division" of the jury when he questioned juror Pierce and determined that he was in the minority voting bloc.  In support of this claim of jury instruction error, petitioner has filed juror affidavits in which several jurors from his trial state that the judge's remarks set out above caused them to believe that a hung jury was not a possible option in petitioner's case.  Specifically, in a form questionnaire, several jurors agreed that:

> Before the verdict was returned the jury sought clarification of what constituted a "hung jury" because not all members of the jury could agree as to a verdict.  After the court did not answer that specific question and instructed us to role play and do other things to reach a verdict, I understood and personally believed that we were not allowed to fail to return a unanimous verdict.

(ECF No. 34 at 16, 18, 20, 22.)

Petitioner raised this claim for the first time in a habeas petition he filed in the California Supreme Court.  (Resp't's Lod. Doc. 14, at consecutive p. 8.)  That court denied that petition with citations to the decisions in In re Robbins (1998) 18 Cal.4th 770, 780 and In re Clark (1993) 5 Cal.4th 750.).  (Resp't's Lod. Doc. 13.)  Respondent again argues that the California Supreme Court's denial of habeas relief constitutes a state procedural timeliness bar which precludes this

23

1   court from considering the merits of petitioner's claim of jury instruction error.  (ECF No. 37 at

2   21.)  Petitioner again argues that the ineffectiveness of his appellate counsel in failing to raise this

3   argument on appeal constitutes cause for his default.  (ECF No. 41 at 16.)

4          For the same reasons set out above with respect to petitioner's jury misconduct claim,

5   petitioner's claim of jury instruction error is procedurally barred.  Petitioner did not raise a claim

6   of ineffective assistance of counsel in connection with the trial court's instruction which he now

7   seeks to challenge.  He has also failed to establish prejudice or that he is actually innocent of the

8   charged crimes.  Accordingly, he is not entitled to federal habeas relief on his jury instruction

9   claim.

10         Even assuming that the claim is not procedurally barred, this claim advanced by petitioner

11  lacks merit.  A trial judge's instruction to a jury to continue deliberations is impermissible only if,

12  considering the totality of the circumstances, the jury was improperly coerced to relinquish their

13  views in favor of reaching a unanimous decision.  Lowenfield v. Phelps, 484 U.S. 231, 237-41

14  (1988); United States v. Hernandez, 105 F.3d 1330, 1333 (9th Cir. 1997).  A reviewing court

15  considers whether the trial court's actions and statements were coercive under the totality of the

16  circumstances.  Lowenfield, 484 U.S. at 237; United States v. Seawell, 550 F.2d 1159, 1163 (9th

17  Cir. 1977) ("[T]he general test of whether a supplemental jury instruction is in error is to consider

18  all the circumstances to determine if the instruction was coercive.") (citation omitted).

19         To the extent petitioner is claiming that the trial court's response to the jury's

20  question was an improper Allen charge, his argument is unpersuasive.  An "Allen charge" is

21               the generic name for a class of supplemental jury instructions given
               when jurors are apparently deadlocked; the name derives from the
22             first Supreme Court approval of such an instruction in Allen v.
               United States, 164 U.S. 492, 501-02, 17 S. Ct. 154, 41 L.Ed. 528
23             (1896).  In their mildest form, these instructions carry reminders of
               the importance of securing a verdict and ask jurors to reconsider
24             potentially unreasonable positions.  In their stronger forms, these
               charges have been referred to as "dynamite charges," because of
25             their ability to "blast" a verdict out of a deadlocked jury.  The
               charge has also been called the "third degree instruction," "the
26             shotgun instruction," and "the nitroglycerin charge."

27  United States v. Berger, 473 F.3d 1080, 1089 (9th Cir. 2007) (quoting United States v. Mason,

28  658 F.2d 1263, 1265 n.1 (9th Cir. 1981)).  The Allen charge, "while productive of continued

                                              24

1   comment and debate, is nevertheless an instruction that has been accepted for many years."

2   Mason, 658 F.2d at 1265.  It is most often used in cases of "apparent juror deadlock" to

3   "admonish jurors to keep trying."  Id.  "In the archetypal Allen charge context, the judge instructs

4   a deadlocked jury to strive for a unanimous verdict."  Weaver v. Thompson, 197 F.3d 359, 365

5   (9th Cir. 1999).  "So long as the defendant has offered facts that fairly support an inference that

6   jurors who did not agree with the majority felt pressure from the court to give up their

7   conscientiously held beliefs in order to secure a verdict," a reviewing court must "proceed to the

8   Allen charge analysis."  Id.

9       This court will assume that the trial court's instruction in this case constituted an "Allen

10   charge."  "There is . . . nothing talismanic about any single element either making the [Allen]

11   charge valid or invalid; the fundamental question is whether the jury was improperly coerced,

12   thus infringing the defendant's due process rights."  Weaver, 197 F.3d at 365.  The Ninth Circuit

13   has identified several factors to assist a reviewing court in determining whether a supplemental

14   jury instruction of this kind violates due process:  "(1) the form of the instruction, (2) the time the

15   jury deliberated after receiving the charge in relation to the total time of deliberation, and (3) any

16   other indicia of coerciveness."  Berger, 473 F.3d at 1090 (quoting United States v. Steele, 298

17   F.3d 906, 911 (9th Cir. 2002)).  See also Weaver, 197 F.3d at 366.

18       Considering the first factor, the trial judge's supplemental instruction in this case:  (1)

19   informed the jurors that they had "the absolute discretion to . . . conduct your deliberations in any

20   way you deem appropriate;" (2) informed the jurors that their "goal as jurors should be to reach a

21   fair and impartial verdict if you are able to do so based solely on the evidence presented" and

22   "without violence to your individual judgment;" (3) phrased the trial judge's comments as

23   suggestions; and (4) emphasized that the trial judge was not "dictating or instructing you as to

24   how to conduct your deliberations."  (RT at 650-54.)  While the instruction informed the jurors

25   that they should not hesitate to change their views, it also advised them to do so only if they were

26   "convinced" their prior vote was "wrong."  The instruction did not advise the jurors to acquiesce

27   in the majority decision, but stressed that each juror should carefully weigh the evidence and

28   "decide the case for yourself."  The form of the instruction, and the aspects of it noted above in

1   particular, minimized any coercive effect the supplemental instruction may have otherwise had.

2   See Navellier v. Sletten, 262 F.3d 923, 943 (9th Cir. 2001) (the "essential question" in

3   determining whether a judge's comments are coercive "is whether the court made clear to the jury

4   that all matters of fact are for its determination").  Cf. Mason, 658 F.2d at 1271 (finding an Allen

5   charge improper where jury was informed that "[i]f, on the other hand, the majority was for

6   acquittal, the minority ought to ask themselves whether they might not reasonably doubt the

7   correctness of the judgment which was not concurred in by the majority"); Jiminez v. Myers, 40

8   F.3d 975, 981 & n.5 (9th Cir. 1993) (noting that failure to instruct jurors to hold on to

9   conscientiously held beliefs "weighs heavily in favor of the conclusion that the defendant's right

10  to a fair trial and impartial jury has been violated").

11      The second relevant factor is the length of time the jurors in petitioner's case deliberated

12  after receiving the trial court's supplemental instruction.  Here, the state court record does reflect

13  that the jury rendered a verdict on the same day they received the supplemental jury instruction.

14  Petitioner has presented no evidence establishing exactly how much time elapsed from the court's

15  giving of the instruction in response to the jury's question and the announcement of a verdict.  In

16  any event, the timing of a verdict in relation to the giving of the instruction alone has proven to be

17  an insufficient basis upon which to find that a verdict was coerced.  Thus, in many cases

18  involving short time periods between the supplemental instruction and the verdict, courts have

19  found no coercive effect resulting from the giving of an Allen charge.  See e.g., United States v.

20  Lorenzo, 43 F.3d 1303, 1307 & n.3 (9th Cir. 1995) (no coercion where there was five-and-a-half

21  hours of deliberation after the giving of an Allen charge); United States v. Bonam, 772 F.2d 1449,

22  1450-51 (9th Cir. 1985) (finding no coercion where there was one day in total of deliberation,

23  one-and-a-half hours of which came after the giving of an Allen charge).

24      Turning to consideration of the third factor, the undersigned concludes that there is no

25  other circumstance present in this case indicating coercion of the jury stemming from the trial

26  court's responsive instruction.  The trial court's supplemental instruction was not directed toward

27  a specific juror or set of jurors, but was addressed to the entire jury.  Nor did the trial judge state

28  or suggest in any way that any juror should give up his or her conscientiously held beliefs in order

to secure a verdict.  To the contrary, the trial judge repeatedly stated in the challenged instruction that each juror was required to vote their conscience and decide the case for themselves.[8]  In short, this is simply not a case in which "it's clear from the record that the charge had an impermissibly coercive effect on the jury."  United States v. Williams, 547 F.3d 1187, 1205 (9th Cir. 2008).[9]

Viewing the record as a whole, the undersigned concludes that the trial judge's supplemental instruction did not unduly coerce the jury to render a unanimous verdict or otherwise render petitioner's trial fundamentally unfair.  Accordingly, even assuming the claim is not procedurally barred, federal habeas relief should be denied.

### C.  Ineffective Assistance of Counsel

In his final claim for relief, petitioner argues that his trial counsel rendered ineffective assistance by failing to secure a Spanish language interpreter for him during pre-trial proceedings and trial.  (ECF No. 34 at 10-11.)  Petitioner explains that during a 45 minute meeting he informed a defense investigator, Larry Fink, he did not understand "the entire process," that he did not speak English, and that he did not understand what counsel was saying.  (Id. at 11.) Petitioner contends that he told the investigator that he needed a "Spanish Translator."  (Id.) According to petitioner, the investigator responded that "he understood Petitioner."  (Id.) Petitioner also alleges that during a 45 minute meeting with his trial counsel, Frances Huey, he again stated that he needed a "Spanish Interpreter" because "he did not know what was going on." (Id. at 12.)  According to petitioner, his trial counsel told him "that she understood him and an interpreter was not necessary."  (Id.)  Petitioner alleges that because he did not receive the services of an interpreter, he "entered the trial proceeding unaware of his Constitutional Rights."

---

[8]  Indeed, even before giving the supplemental instruction, the trial judge specifically told juror Pierce that "you just can't concede to the desire of the majority of jurors simply because they have a different view than yours."  (RT at 649.)

[9]  The undersigned also notes that the juror affidavits submitted by petitioner in support of this claim, which set forth the reactions of several jurors to the trial judge's supplemental jury instruction, concern the jurors' mental processes and are therefore inadmissible to support his claim of jury instruction error.  Tanner, 483 U.S. at 117; Sassounian, 230 F.3d at 1108-09.

27

1   (Id.)  Petitioner further states that he "unfortunately stood there idle as a spectator while his

2   Constitutional Right [sic] were grossly violated all due to his lack of formal education and his

3   inability to speak english [sic]."  (Id.)

4          Petitioner raised this claim for the first time in his petition for a writ of habeas corpus filed

5   in the Sacramento County Superior Court.  That court rejected petitioner's arguments, reasoning

6   as follows:

7               Petitioner contends that he "consistently" informed his counsel that
               he had difficulty understanding the Court proceedings and
8               requested a Spanish-speaking interpreter numerous times.  He
               alleges that counsel indicated that she would seek to provide him
9               with an interpreter, but never did.  Petitioner's failure to present
               more facts in support of this allegation prevents the Court from
10              reviewing his claim.  Petitioner never states the dates or times when
               he requested an interpreter or when his counsel agreed to provide
11              him with one, nor does he even reference any particular court
               proceedings that he was having difficulty understanding.  Petitioner
12              does not present any facts elaborating on why he was prejudiced by
               the lack of an interpreter and, he provides no facts that suggest that
13              he could not understand the Court proceedings.  Accordingly, he
               has failed to state a prima facie claim for relief.
14

15   (Resp't's Lod. Doc. 9, at 3.)

16          The clearly established federal law governing ineffective assistance of counsel claims is

17   Strickland v. Washington, 466 U.S. 668 (1984).  To succeed on a Strickland claim, a defendant

18   must show that (1) his counsel's performance was deficient and that (2) the "deficient

19   performance prejudiced the defense."  Id. at 687.  Prejudice is found where "there is a reasonable

20   probability that, but for counsel's unprofessional errors, the result of the proceeding would have

21   been different."  Id. at 694.  This test applies where the ineffective assistance of counsel claim is

22   based upon counsel's failure to request an interpreter.  Gonzalez v. United States, 33 F.3d 1047,

23   1051 (9th Cir. 1994).

24          As in his state habeas petition, petitioner has failed before this court to support this claim

25   of ineffective assistance of counsel with specific facts or evidence.  "'Conclusory allegations

26   which are not supported by a statement of specific facts do not warrant habeas relief.'"  Jones v.

27   Gomez, 66 F.3d 199, 204 (9th Cir. 1995) (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)).

28   Further, as noted by respondent, self-serving allegations by a habeas petitioner, without more, are

1   not sufficient to warrant relief.  See e.g., Womack v. Del Papa, 497 F.3d 998, 1004 (9th Cir.

2   2007) (ineffective assistance of counsel claim denied where, aside from his self-serving

3   statement, which was contrary to other evidence in the record, there was no evidence to support

4   his claim); Dows v. Wood, 211 F.3d 480, 486 (9th Cir. 2000) (noting that there was no evidence

5   in the record to support petitioner's ineffective assistance of counsel claim, "other than from

6   Dows's self-serving affidavit"); Underwood v. Clark, 939 F.2d 473, 476 (7th Cir. 1991)

7   (defendant's self-serving statement, under oath, that his trial counsel refused to let him testify

8   insufficient, without more, to support his claim of a denial of his right to testify); Elizey v. United

9   States, 210 F.Supp.2d 1046, 1051 (C.D. Ill. 2002) (petitioner's claim that his trial counsel failed

10   to advised him to accept a proffered plea agreement not sufficiently supported where only

11   evidence was petitioner's "own self-serving affidavit and record facts contradicted petitioner's

12   affidavit.").

13       Here, the state court record contradicts petitioner's assertion that he was unable to speak

14   English or to understand his pre-trial and trial proceedings.  Petitioner's allegations reflect that

15   both his defense investigator and his trial counsel were able to carry on lengthy conversations

16   with him in English, and that they were able to understand him.  The state court record reflects

17   that petitioner interacted with his probation officer; there is no evidence that an interpreter was

18   needed for those interactions.  (See, e.g., CT at 154-56.)  Further, petitioner informed his

19   probation officer that he had received a high school diploma from the Department of Corrections

20   in 1994.  (Id. at 155.)  Petitioner has also failed to point to any part of the trial transcript which

21   would support his allegation that he did not understand the trial proceedings, such as a request by

22   him or his trial counsel for a translator or any complaint or indication on his part that he was

23   unable to understand what was being said.

24       For all of these reasons, the undersigned concludes that petitioner has failed to

25   demonstrate either deficient performance or prejudice with respect to his claim of ineffective

26   assistance of counsel.  Petitioner's conclusory, self-serving and unsupported statement that he

27   needed a Spanish language interpreter because he was unable to speak or understand English is

28   insufficient for this purpose, in light of contrary evidence in the record. See Gonzalez, 33 F.3d at

29

1  1051 (defense counsel's failure to request interpreter reasonable where record illustrated counsel,

2  with assistance of defendant's wife, had conveyed the essence of the charges and the plea

3  agreement); see also Womack, 497 F.3d at 998.  Accordingly, petitioner is also not entitled to

4  federal habeas relief with respect to this claim.

5  **IV. Conclusion**

6       For the reasons set forth above, IT IS HEREBY RECOMMENDED that petitioner's

7  application for a writ of habeas corpus be denied.

8       These findings and recommendations are submitted to the United States District Judge

9  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

10  after being served with these findings and recommendations, any party may file written

11  objections with the court and serve a copy on all parties.  Such a document should be captioned

12  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

13  shall be served and filed within fourteen days after service of the objections.  Failure to file

14  objections within the specified time may waive the right to appeal the District Court's order.

15  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

16  1991).  In his objections petitioner may address whether a certificate of appealability should issue

17  in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing

18  Section 2254 Cases (the district court must issue or deny a certificate of appealability when it

19  enters a final order adverse to the applicant).

20  Dated:  October 7, 2014

21

22                                          _Dale A. Drozd_

23                                          DALE A. DROZD
                                            UNITED STATES MAGISTRATE JUDGE

24  DAD:8:
    Avalos52.hc

25

26

27

28

30